UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SALLIE A. PROCTOR,

                              Plaintiff,

        v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                              Defendant.

Case No. 3:10-cv-05931-RBL-KLS

REPORT AND RECOMMENDATION

Noted for December 16, 2011

Plaintiff has brought this matter for judicial review of defendant's denial of her

applications for disability insurance and supplemental security income ("SSI") benefits.  This

matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v.

Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the

undersigned submits the following Report and Recommendation for the Court's review,

recommending that for the reasons set forth below, defendant's decision to deny benefits should

be reversed and this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On October 22, 2007, plaintiff filed an application for disability insurance benefits and

another one for SSI benefits, alleging disability as of August 27, 2007, due to scoliosis,

REPORT AND RECOMMENDATION - 1

fibromyalgia, sciatica, and problems with her joints and knees. See Administrative Record ("AR") 10, 94, 102, 115. Both applications were denied upon initial administrative review and on reconsideration. See AR 10, 47, 51, 53. A hearing was held before an administrative law judge ("ALJ") on December 17, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 20-42.

On February 16, 2010, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 10-19. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on October 22, 2010, making the ALJ's decision defendant's final decision. See Tr. 1; see also 20 C.F.R. § 404.981, § 416.1481. On December 21, 2010, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1-#3. The administrative record was filed with the Court on April 13, 2010. See ECF #10. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in assessing plaintiff's credibility; (3) in assessing plaintiff's residual functional capacity; and (4) in finding her to be capable both of returning to her past relevant work and performing other work existing in significant numbers in the national economy. The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while defendant's decision should be reversed, this matter should be remanded for further administrative proceedings.

<u>DISCUSSION</u>

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to

support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767

F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See

Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F.

Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational

interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577,

579 (9th Cir. 1984).

I.      The ALJ's Evaluation of the Medical Evidence in the Record

        The ALJ is responsible for determining credibility and resolving ambiguities and

conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

Where the medical evidence in the record is not conclusive, "questions of credibility and

resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639,

642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v.

Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining

whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at

all) and whether certain factors are relevant to discount" the opinions of medical experts "falls

within this responsibility." Id. at 603.

        In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

"must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this

"by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences

"logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may

REPORT AND RECOMMENDATION - 3

draw "specific and legitimate inferences from the ALJ's opinion." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. <u>See</u> <u>Lester</u>, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." <u>Batson v. Commissioner of Social Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>see also</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." <u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

A.      <u>Dr. Hendryx</u>

In his decision, the ALJ summarized the findings of Rebecca Hendryx, M.D., plaintiff's

REPORT AND RECOMMENDATION - 4

treating physician, as follows:

> On July 16, 2008, the physical examination revealed the claimant had limited range of motion in the neck. Spurling test was negative bilaterally. In the back, there was mild to moderate scoliosis and tenderness to palpation with palpable spasms. There was no clubbing, cyanosis, edema, or muscle atrophy in the extremities; pulses were 2+. Strength was 5/5 in the upper extremities and 4+/5 in the lower extremities. Gait was essentially normal. Cranial nerves II-XII were intact. Rapid alternating movements were intact (Exhibit 5F/17). MRI of the cervical and lumbar spine revealed degenerative disc disease and facet osteoarthritis (Exhibits 3F/1-2; 5F/13, 17). On April 1, 2009, it was reported the claimant had elevated liver enzymes, consistent with alcoholic-hepatitis (Exhibit 5F/9). The claimant was drinking [a] half pint of liquor per day (Exhibit 5F/8, 15) and smoking 2 packs of cigarettes per week (Exhibit 5F/6). On April 29, 2009, the claimant reported her mood was very good (Exhibit 5F/5).

AR 13. Plaintiff argues the ALJ erred by not expressly acknowledging Dr. Hendryx was her treating physician. But plaintiff has not shown that this had any impact on the ultimate disability decision or that the ALJ was actually required to do so. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[I]n interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'") (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir.1998)); Magallanes, 881 F.2d 747, 755, (9th Cir. 1989) (ALJ need not recite "magic words" in his or her decision, as no specific "incantation" is required); see also Renner v. Heckler, 786 F.2d 1421, 1424 (9th Cir. 1986) ("[I]t serves no purpose to require every step of each decisional process to be enunciated with precise words and phrases drawn from relevant disability regulations."). The ALJ thus committed no error in this regard.

Plaintiff further argues the ALJ erred in failing to mention many of the objective clinical findings Dr. Hendryx made, including the fact that she had limited range of motion; that she was visibly uncomfortable, that she stood for most of the examination, and that she moved around frequently. See 198. None of these findings alone, however, establish the existence of specific work-related limitations. Indeed, the mere existence of a diagnosed impairment or of symptoms

stemming therefrom, without such assessed limitations, is not sufficient to establish a finding of disability. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993). Accordingly, they also do not "fully confirm" plaintiff's complaints of pain and limitations as she asserts. ECF #16, p. 12. Further, the statement Dr. Hendryx made regarding plaintiff's "debilitating" back pain radiating to her extremities, is clearly based on her own self-report, and thus it does not constitute clinical objective evidence the ALJ was required to adopt as such. See AR 198.

B.    Dr. Ho

Plaintiff also challenges the following additional findings made by the ALJ:

The claimant underwent a consultative examination in February 2008 (Exhibit 21F). She complained of constant neck, back, and joint pain exacerbated by standing, walking, or sitting for long periods of time. The physical examination revealed she was alert, oriented, and able to follow instructions without difficulty. The claimant sat comfortably in the exam room and was able to get on and off the exam table. She was able to perform finger-nose testing bilaterally without difficulty. Romberg was absent. The claimant was able to tandem walk, bend, reach, grip and release, manipulate large and small objects, make a fist with both hands, and touch thumbs to fingers. There was no evidence of paravertebral muscle spasms or tenderness to feather touch in neck or entire back. There was no evidence of any joint deformities, crepitus, or effusion. The knees and elbows were non-tender. The claimant had the standard 18 tender points of fibromyalgia. Motor strength was 5/5 in the upper and lower extremities bilaterally. Bulk and tone were normal. There was no evidence of atrophy. The claimant had normal pinprick, vibration, position, and touch sensations in the upper and lower extremities, except that she had decreased sensation to light touch and pinprick in the dorsal aspect of her hands. Deep tendon reflexes were 2+ bilaterally in the upper extremities and 1+ bilaterally in the lower extremities. Cranial nerves II-XII were grossly intact. Mary Ho, M.D., the examiner, noted that there were some inconsistencies in regards to pain behavior and functional elements; the claimant did not appear to exert adequate effort. Dr. Ho noted that an assistive device was not used and was not medically necessary.

. . .

. . . Dr. Ho stated the claimant is limited to standing and walking cumulative at least two hours in an eight-hour workday, due to limitations of her lumbar spine and lower extremities and fibromyalgia. She may sit cumulative up to six hours in an eight-hour workday, Dr. Ho further opined that the claimant's

REPORT AND RECOMMENDATION - 6

lifting is limited to 10 pounds *occasionally* and less than 10 pounds *frequently*, due to limitations of her neck, back, joints, and fibromyalgia. Postural limitations include occasional kneeling and crouching. She has no other manipulative or environmental limitations (Exhibit 2F/6-7). The undersigned gives great weight to Dr. Ho's opinion because it is supported by the record evidence when considered as a whole.

AR 13, 17 (emphasis in original). As with Dr. Hendryx, plaintiff argues the ALJ erred in not mentioning all of Dr. Ho's objective findings, including her range of motion and positive straight leg raise test results. But for the same reason the ALJ did not err by not expressly addressing all of the objective findings from Dr. Hendryx – namely, that those findings alone failed to establish the existence of significant work-related limitations – here too the ALJ committed no error in not expressly mentioning the range of motion and straight leg test results. For example, while it may be that Dr. Ho noted limited range of motion, he did not translate that into work place restrictions such as ones on reaching, bending, pulling, and so forth. See AR 167-69.

C.    Plaintiff's Fibromyalgia

The ALJ further found as follows in his decision:

Specifically with respect to the claimant's fibromyalgia, the undersigned is cognizant of the lack of objective findings associated with fibromyalgia. As noted in *Sarchet v. Chater*, 78 F.3d 305, 306-307 (7th Cir., 1996), fibromyalgia is a "common, but elusive and mysterious disease," and "no laboratory tests for the presence or severity of fibromyalgia" exist. The diagnosis of fibromyalgia does not mean that the claimant is disabled per se. While the lack of objective findings is normal, and will not be used to discredit the existence or severity of the claimant's impairment, the other factors . . . from SSR [Social Security Ruling] 96-7p[,1996 WL 374186, regarding the claimant's symptoms and the extent to which they reasonably can be accepted as consistent with the objective medical and other evidence in the record (see AR 15)] are still highly relevant. . . . [T]he medical evidence shows that findings on the neurological examinations have been minimal (Exhibits 1 F; 5F). Therefore, the undersigned finds that fibromyalgia would not prevent the claimant from working in a *sedentary* demand occupation.

This finding is supported by Dr. Marie Ho's opinion . . .

AR 17 (emphasis in original). Plaintiff argues that despite expressly stating he was not going to

REPORT AND RECOMMENDATION - 7

use the lack of objective medical evidence in the record to discredit the existence or the severity of her fibromyalgia, this is in fact what he did. The undersigned disagrees.

A fibromyalgia diagnosis may not be rejected solely on the basis that it is not supported by objective medical evidence. See Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) (ALJ erred in discounting opinions of treating physicians by relying on his own disbelief of claimant's symptom testimony and misunderstanding of fibromyalgia). Accordingly, it is improper for an ALJ to "effectively" require "'objective' evidence for a disease that eludes such measurement." Id. (citing Green-Younger v. Barnhart, 335 F.3d 99, 108 (2nd Cir. 2003)). On the other hand, as defendant points out, the ALJ may rely on a lack of objective medical support in the record, at least in part, to discount a claimant's subjective complaints related to fibromyalgia. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).[1]

Contrary to plaintiff's assertion, this case is not like that in Benecke, where the ALJ had relied on his "[s]heer disbelief" and misunderstanding of fibromyalgia to discount the opinions of the claimant's treating physicians. See 379 F.3d at 594.[2] Rather, here the ALJ expressly found

---

[1] As the Ninth Circuit explained in Rollins:

> Assuming, without deciding, that fibromyalgia does constitute a qualifying "severe impairment" under the [Social Security] Act, we nonetheless conclude that the ALJ stated sufficient specific reasons for not fully crediting [the claimant's] pain testimony. For example, the ALJ noted that when [the claimant] was discharged from the Behavioral Medicine Center of Loma Linda University Medical Center after treatment for addiction to painkillers, the doctors discharging her said that she had "no restrictions on activity" and gave her a Global Assessment of Function level of 70, "indicating only mild symptoms and generally quite adequate function." While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.

Id.

[2] As described by the Ninth Circuit in Benecke:

> The ALJ expressed his skepticism at length during the [administrative] hearing. For example, the ALJ asserted that only one doctor was "really saying the fibromyalgia." [sic] After [the claimant's] counsel pointed out that several doctors diagnosed [the claimant] with fibromyalgia, the ALJ asked, "what on earth is that based on? I mean, there's no-I mean, how

REPORT AND RECOMMENDATION - 8

plaintiff's fibromyalgia was not only a medically determinable impairment, but was "severe" as well at step two of the sequential disability evaluation process.[3] See AR 12. It also was not error for the ALJ to cite the lack of objective medical support in the record to discount plaintiff's pain and other subjective complaints related to her fibromyalgia, although as explained below the ALJ did err overall in discounting her credibility.

D.    Improperly Identified Medical Consultant

In his decision, the ALJ stated "[t]he [state agency disability determination e]xaminers' reports have been considered," and "[t]he residual functional capacity conclusions reached by these medical consultants also supports a finding of 'not disabled.'" AR 17. But as plaintiff notes, and defendant admits, the reports the ALJ referred to here, consists of a physical residual functional capacity assessment form completed by a non-medical adjudicator, which the Social Security Administration has directed ALJs not to consider or treat as medical opinion evidence. See AR 174-81; see also ECF #16-1. Accordingly, the ALJ erred in doing so in his decision. The undersigned finds, however, that such error was harmless, as the ALJ merely referred to the above state agency assessment as further objective support for a finding of non-disability, that is

---

am I suppose [sic] to sit up here and listen to doctors tell me that there is nothing physical that they can find, yet she's so restricted . . . [?] I just don't find that credible. . . . I'm not seeing anything from the physical that would in any way justify those conclusions from the Rheumatologist other than trying to help the claimant get disability. . . . There's just the paucity of any objective findings whatsoever. . . . I mean, there was almost like a really buying [sic] into the syndrome in a way."

379 F.3d at 594 n.3.

[3] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); see also SSR 96-3p, 1996 WL 374181 *1. The step two determination, though, is a de minimis screening device used to dispose of groundless claims. See Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).

REPORT AND RECOMMENDATION - 9

in addition to the medical evidence the ALJ already cited. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion).

II.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan, 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of

symptoms. See id.

Here, the ALJ discounted plaintiff's credibility in part on the following basis:

> . . . [A] careful review of the record does not document sufficient objective medical evidence to substantiate the severity of pain and degree of functional limitations alleged by the claimant. The objective evidence fails to document the presence of any impairment or combination of impairment that could reasonably be expected to result in pain or other symptoms of such severity or frequency as to preclude the range of work [the ALJ found plaintiff could do].

> The medical evidence indicated that the claimant has complaints of pain. However, this condition does not result in severe dysfunction as evidenced by minimal findings on examination.

> While the undersigned accepts that the claimant has established that she experiences discomfort, she has not established, by objective evidence, the extent of the disease and its affect [sic] on her ability to work. Such examples include motor loss, muscle atrophy, diminished sensation and reflexes, neurological deficits, and functional loss of either upper or lower extremities. . . .

AR 16. A determination that a claimant's subjective complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998). Although plaintiff argues the ALJ did not properly evaluate the medical evidence in the record, and therefore could not rely thereon to discount her credibility, as discussed above, the ALJ's evaluation thereof was not improper. As such, it also was not improper to look to that evidence here.

As indicated above, however, a claimant's pain testimony may not be rejected "solely because the degree of pain alleged is not supported by objective medical evidence." Orteza v. Shalala, 50 F.3d 748, 749-50 (9th Cir. 1995) (quoting Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir.1991) (en banc)) (emphasis added); see also Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir.2001); Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989). The same is true with respect to a claimant's other subjective complaints. See Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir.

REPORT AND RECOMMENDATION - 11

1995) (finding that although <u>Bunnell</u> was couched in terms of subjective complaints of pain, its reasoning extended to claimant's non-pain complaints as well). As explained below, though, none of the other reasons the ALJ provided for discounting plaintiff's credibility meet the clear and convincing standard.

For example, citing Fifth Circuit case law, the ALJ also discounted plaintiff's credibility in part because she had not shown her pain was "constant, unremitting, and unwholly responsive to therapeutic treatment," which the ALJ stated was necessary for it to be deemed disabling. AR 16 (citing <u>Falco v. Shalala</u>, 27 F.3d 160, 163 (5th Cir. 1994), <u>Harrell v. Bowen</u>, 862 F.2d 471, 480 (5th Cir. 1988)). But as plaintiff points out, unlike the Fifth Circuit, the Ninth Circuit has not required such a showing. While defendant is correct that the Ninth Circuit has recognized that pain does not necessarily preclude gainful employment (<u>see</u> <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989)), this is not the standard the Fifth Circuit appears to have adopted in the above two cases or employed by the ALJ in this case. Therefore, this reason for discounting plaintiff's credibility was not legitimate.

The ALJ next discounted plaintiff's credibility because:

> . . . The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. Her treatment for the alleged disabling symptoms has been essentially routine and/or conservative in nature. She has not required orthopedic surgery and objective findings on examination have been minimal (*see* Exhibits 1F; 2F; 5F). The lack of evidence indicating emergency room visits for "extreme" pain or other pain management modalities, i.e., steroid injections or the use of a TENs unit, clearly shows that her symptoms are well controlled with medications. An impairment that is controlled or controllable with appropriate treatment cannot be made the basis of a finding of disability. (20 CFR 404.1530 and 416. 930).

AR 16. Failure to assert a good reason for not seeking treatment "can cast doubt on the sincerity of the claimant's pain testimony." <u>Fair</u>, 885 F.2d at 603; <u>see also</u> <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ's discounting claimant's credibility in part due to lack

of consistent treatment, and noting that fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain); Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered claimant's failure to request serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription for conservative treatment only to be suggestive of lower level of pain and functional limitation).

An ALJ, though, "must not draw any inferences" about a claimant's symptoms and their functional effects from such a failure, "without first considering any explanations" the claimant "may provide, or other information in the case record, that may explain" that failure. SSR 96-7p, 1996 WL 374186 *7; see also Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (improper to discount credibility based on failure to pursue treatment, when claimant "has a good reason for not" doing so, such as lack of insurance); Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995) (benefits may not be denied because of failure to obtain treatment due to inability to afford it). In this case, the record contains a number of references to plaintiff's difficulties affording recommended treatment. See AR 165 ("She is not receiving treatment now as she does not have medical insurance."); 187 ("She has no medical insurance."); 198 (noting that plaintiff likely would need to pay out of pocket for recommended MRI studies, and giving her telephone numbers to call in order to do "some cost comparison").

Because the ALJ did not inquire into whether plaintiff had a good reason for not pursuing further treatment despite the above evidence of lack of insurance coverage, he erred. Defendant argues this does not explain why, when she received treatment, it was routine and conservative in nature. But that is exactly the point. The ALJ discounted plaintiff's credibility here on the basis

that she did not pursue more aggressive treatment.  Given that it appears she lacked the financial

resources to do so, it is not too surprising that what treatment she did receive, was limited to that

which was routine and conservative, and thus generally less expensive.

Lastly, the ALJ discounted plaintiff's credibility because of her daily activities:

> The claimant has described daily activities which are not limited to the extent
> one would expect, given the complaints of disabling symptoms and
> limitations.  She testified she is able to lift 5 to10 pounds, stand two hours at a
> time, walk two blocks, and sit 1 hour at a time.  She indicated that she drinks
> [a] half pint of alcohol per day for pain and does housework, shopping, dishes,
> laundry, and cooking (Hearing Testimony).  Given the claimant's ability to
> maintain daily activities and the lack of treatment other than medications, the
> undersigned finds that she has limitations caused by mild to moderate pain;
> however, her limitations are not to the degree that she alleges.

AR 17.  The Ninth Circuit has recognized "two grounds for using daily activities to form the

basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).

First, they can "meet the threshold for transferable work skills." Id.  Second, they can "contradict

his [or her] other testimony." Id.

Under the first ground, a claimant's testimony may be rejected if the claimant "is able to

spend a substantial part of his or her day performing household chores or other activities that are

transferable to a work setting." Smolen, 80 F.3d at 1284 n.7.  But the claimant need not be

"utterly incapacitated" to be eligible for disability benefits, and "many home activities may not

be easily transferable to a work environment." Id.  In addition, the Ninth Circuit has "recognized

that disability claimants should not be penalized for attempting to lead normal lives in the face of

their limitations." Reddick , 157 F.3d at 722.

None of the activities the ALJ cites are shown in the record to have been performed at a

level that is indicative of transferrable work skills or that necessarily contradict plaintiff's alleged

symptoms and limitations.  For example, while plaintiff did testify she was able to stand for two

REPORT AND RECOMMENDATION - 14

hours at a time and sit for one hour at a time (see AR 27), upon further questioning she testified

that she had to alternate between standing and sitting every 20 minutes (see AR 31).  In addition,

plaintiff reported that she shopped with assistance, with her husband doing most of the shopping,

and that she could not walk far, cooked only "minimally" and did some "light" housework. AR

165; see also AR 131-36.  Accordingly, here too the ALJ erred.

III.    The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step

three of the [sequential disability] evaluation process," the ALJ must identify the claimant's

"functional limitations and restrictions" and assess his or her "remaining capacities for work-

related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity

("RFC") assessment is used at step four to determine whether he or she can do his or her past

relevant work, and at step five to determine whether he or she can do other work. See id.  It is

therefore what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is

able to perform based on all of the relevant evidence in the record. See id.  However, an inability

to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ

must consider only those limitations and restrictions "attributable to medically determinable

impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the

claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be

accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case assessed plaintiff with the residual functional capacity to perform

"***sedentary* work . . . with mild to moderate pain and discomfort except that she can only**

***occasionally* kneel and crouch**." AR 15 (emphasis in original).  Plaintiff argues the ALJ erred

here, in light of his improper evaluation of the medical evidence in the record and assessment of her credibility. But as discussed above, the ALJ did not err in evaluating the medical evidence in the record. On the other hand, also as discussed above, the ALJ's stated reasons for discounting plaintiff's credibility were not clear and convincing and thus were improper. Further, given that it is improper to "effectively" require "'objective' evidence for a disease[, such as fibromyalgia,] that eludes such measurement," it is unclear whether the ALJ's assessment of plaintiff's residual functional capacity is completely accurate. See Benecke, 379 F.3d at 594 (citing Green-Younger, 335 F.3d at 108); see also Rollins, 261 F.3d at 855 (noting fibromyalgia's cause or causes are unknown, there is no cure for it, its symptoms are entirely subjective, and there are no laboratory tests for its presence or severity).

IV.    The ALJ's Step Four Determination

At step four of the sequential disability evaluation process, the ALJ found plaintiff to be capable of performing her past relevant work as an office manager. See AR 17. Plaintiff argues this finding was improper, given the ALJ's improper RFC assessment. Plaintiff has the burden at step four to show that she is unable to return to her past relevant work. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999). The undersigned agrees that because, as explained above, the ALJ failed to provide clear and convincing reasons for discounting plaintiff's credibility, and thus erred in assessing her residual functional capacity, it also is far from clear that plaintiff can perform her past relevant work.

On the other hand, the undersigned does not agree that the vocational expert misclassified plaintiff's past relevant work. In determining whether plaintiff is capable of performing her past relevant work, the ALJ may look to see whether she retains the residual functional capacity "to perform the particular functional demands and job duties peculiar to an individual job as . . . she

actually performed it." SSR 82-61, 1982 WL 31387 *1. But the ALJ also may base his step four determination on whether plaintiff retains the RFC "to perform the functional demands and job duties of [her past relevant work] as ordinarily required by employers throughout the national economy." Id. at *2 (providing that if claimant cannot perform functional demands or job duties actually required in his or her past relevant work, but can perform functional demands and job duties of that work as generally required by employers in national economy, he or she should be found not disabled, and descriptions of jobs in Dictionary of Occupational Titles ("DOT") can be relied on to define work as it is usually performed in national economy).

At the hearing, the vocational expert testified that plaintiff could perform the job of office manager "as it's defined by the DOT, but not as she performed it." AR 38. Noting the vocational expert's testimony, the ALJ found plaintiff could perform that job "as normally performed." AR 18. Thus, the ALJ's reliance on the vocational expert's testimony here was proper, at least to the extent that it accorded with the requirements of SSR 82-61. As such, no error was committed by the ALJ in this instance.

V.      The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987);

REPORT AND RECOMMENDATION - 17

Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 38. In response to that question, the vocational expert testified that an individual with those limitations – and who has the same age, education and work background as plaintiff – would be capable of performing other jobs. See AR 38-39. Based on the testimony of the vocational expert, the ALJ found in the alternative that plaintiff was capable of performing other jobs existing in significant numbers in the national economy. See AR 18-19.

Plaintiff argues the ALJ erred in so finding, because the hypothetical question posed by the ALJ did not contain all of her functional limitations. The undersigned agrees that because the ALJ erred in assessing plaintiff's credibility and thus also in assessing her residual functional capacity, he erred as well in finding her to be capable of performing other jobs at step five of the sequential disability evaluation process. Plaintiff argues the ALJ further erred by failing to adopt the additional testimony of the vocational expert, that an individual who had to take rest periods during the day for 30 to 60 minutes, three times in an eight-hour workday, would not be able to sustain the jobs the vocational expert identified. See AR 40. But it is not at all clear that the ALJ would be required to adopt such a limitation, particularly in light of the lack of objective medical evidence in the record to support it. The ALJ thus did not err in this regard.

REPORT AND RECOMMENDATION - 18

Plaintiff goes on to argue that the ALJ also erred by failing to ask if the testimony of the vocational expert conflicted with the information contained in the DOT. The ALJ may rely on vocational expert testimony that "contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). The ALJ has the affirmative responsibility to ask the vocational expert about possible conflicts between her testimony and information in the DOT. See Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704. But as defendant points out, the ALJ expressly did so. See AR 41.

Plaintiff argues the ALJ also erred, because the vocational expert failed to acknowledge that his testimony that an individual who could sit and stand for only 20 minutes each at a time would still be able to perform the jobs identified (see Tr. 39-40), conflicted with the definitions thereof contained in the DOT, as sedentary work involves sitting most of the time. But because the objective medical evidence in the record does not clearly support this limitation, even though plaintiff's testimony may, again it is not at all certain the ALJ would have had to adopt it. As such, no error was committed here by the ALJ in failing to inquire of the vocational expert about this potential conflict with the DOT.

VI.    This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate

REPORT AND RECOMMENDATION - 19

award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain with respect to plaintiff's residual functional capacity and her ability to perform her past relevant work and other jobs existing in significant numbers in the national economy, this matter should be remanded for further administrative proceedings.

It is true the Ninth Circuit has held that remand for an award of benefits is required where the ALJ's reasons for discounting the claimant's credibility are not legally sufficient, and "it is clear from the record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's testimony." Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003). The Court of Appeals in Connett went on to state, however, it was "not convinced" the "crediting as true" rule was mandatory. Id. Thus, at least where, as in this case, findings are insufficient as to whether a claimant's testimony should be "credited as true" given the lack of objective medical evidence in the record to support that testimony, it appears the courts "have some flexibility in applying" that rule. Id.; but see Benecke, 379 F.3d at 593 (applying "crediting as true" rule, but

noting its contrary holding in <u>Connett</u>).[4]  Accordingly, the undersigned declines to do so in this case.

CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court find the ALJ improperly concluded plaintiff was not disabled.  Thus, the undersigned recommends as well that the Court reverse defendant's decision and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. <u>See also</u> Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **December 16, 2011**, as noted in the caption.

DATED this 28th day of November, 2011.


*Karen L. Strombom*
Karen L. Strombom
United States Magistrate Judge

---

[4] [15]In <u>Benecke</u>, the Ninth Circuit found the ALJ not only erred in discounting the claimant's credibility, but also with respect to the evaluations of her treating physicians. 379 F.3d at 594.  The Court of Appeals credited both the claimant's testimony and her physicians' evaluations as true. <u>Id.</u>  It also was clear in that case that remand for further administrative proceedings would serve no useful purpose and that the claimant's entitlement to disability benefits was established. <u>Id.</u> at 595-96.

REPORT AND RECOMMENDATION - 21